IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-00186-FL

| | |
|---|---|
| MICHAEL L. CROMWELL, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-23, DE-25] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael L. Cromwell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on February 24, 2010, alleging disability beginning July 1, 2004, and his claim was denied initially and upon reconsideration. (R. 11, 90-101, 178-88). A hearing before the Administrative Law Judge ("ALJ") was held on December 28, 2011, at which Claimant, represented by counsel, and a vocational expert

("VE") appeared and testified. (R. 28-79). On April 13, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 11-27). On July 3, 2013, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the ALJ erred in determining Claimant was not disabled due to the availability of semi-skilled, light work. Pl.'s Mem. [DE-24] at 4-5.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 13). Next, the ALJ determined Claimant had the following severe impairments: coronary artery disease status post multiple stenting and coronary artery bypass graft (CABG) x 5, hypertension, diabetes mellitus, and obesity. *Id.* The ALJ also found Claimant had the nonsevere impairments of depression and alcohol abuse. (R. 14). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination,

3

to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13-15). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living, no limitations in social functioning, and mild limitations in concentration, persistence and pace with no episodes of decompensation of extended duration. (R. 14-15).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[1] with the additional limitations of no climbing ladders, ropes, or scaffolds; a low stress work setting; a stable work setting with no more than occasional changes; and no concentrated exposure to workplace hazards such as dangerous moving machinery and unprotected heights. (R. 16-20). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 17). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 20). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 20-22).

## B.  Vocational Expert's Testimony at the Administrative Hearing

A VE testified at the administrative hearing regarding Claimant's past relevant work, as well as jobs that would be available for a hypothetical person with certain limitations described by the

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

ALJ. (R. 55-73). The VE first classified Claimant's past relevant work as follows: police officer, Dictionary of Occupational Titles ("DOT") code 375.263-014, medium exertion, skilled, and SVP of 6; deputy sheriff, DOT code 377.263-010, medium exertion, skilled, and SVP of 5; jailor, DOT code 372.367-014, light exertion, semi-skilled, and SVP of 4; bailiff, DOT code 377.667-010, light exertion, semi-skilled, with an SVP of 3; and deputy sheriff, civil division (process server), DOT code 377.667-018, light exertion, semi-skilled, and SVP of 3. (R. 55-58). The VE further indicated that at times the exertion level for each position could be higher as performed, for example if use of force is necessary to restrain an individual. (R. 56, 58-59).

The ALJ then posed the following hypothetical to the VE:

> [A]ssume an individual of the claimant's age, education, and past relevant work who is limited to work at the light level of exertion as that level is defined in the regulations, which generally includes lifting, carrying, pushing and/or pulling up to 20 pounds occasionally, 10 pounds frequently. Sitting, standing, and/or walking of periods up to six hours each in an eight-hour workday with normal breaks. The . . . individual would need a low-stress work setting [defined as excluding jobs with temperament level S, or stress and dangerous activity,] . . . no more than occasional changes in the work setting as far as the routine work setting, the work environment basically. No more than occasional changing. So a relatively stable work setting. A stable work setting with no more than occasional changes. . . . And also add avoid concentrated exposure to workplace hazards such as dangerous moving machinery and unprotected heights. And no climbing ladders, ropes, scaffolds.

(R. 59-62). The VE opined that the hypothetical individual could not perform any of Claimant's past relevant work, due to the stress limitation. (R. 62). However, the VE identified the following jobs at the light exertion level consistent with the hypothetical limitations: mail clerk, DOT code 209.687-026, light exertion, unskilled, and SVP of 2, and office helper, DOT code 239.567-010, light exertion, unskilled, and SVP of 2. (R. 63). Additionally, utilizing transferrable skills from Claimant's past work, the VE also identified the jobs of gate guard, DOT code 372.667-030, light exertion, semi-skilled, and SVP of 3, and police officer safety instructor, DOT code 375.267-042,

5

light exertion, skilled, and SVP of 6. (R. 63-69). In response to questioning by the ALJ, the VE clarified that the gate guard position is listed as semi-skilled and makes use of transferrable skills, but is performed at an unskilled level. (R. 70-71). In response to questioning by Claimant's counsel, the VE testified that the police officer safety instructor position would satisfy the limitation of no more than occasional changes in the work situation based on its reasoning level of 3. (R. 72).

## V. DISCUSSION

### A. The ALJ's Step Five Determination

Claimant contends the ALJ's determination that Claimant is not disabled because he can perform light, skilled work is not supported by substantial evidence. Pl.'s Mem. at 4-5. Claimant specifically argues that the limitation of "a stable work setting with no more than occasional changes" is consistent with unskilled work, that the transferability of skills is not relevant where a claimant is limited to unskilled work, and that the Medical Vocational Guidelines (the "Grids") Rule 202.06 applies to direct a finding of "disabled." *Id.* at 5-6. The government argues that the ALJ did not limit Claimant to unskilled work, that Claimant has transferable skills to jobs existing in significant number, and that the finding Claimant was not disabled is supported by substantial evidence. Gov't's Mem. [DE-26] at 5-7.

At step five, the Commissioner bears the burden of demonstrating that work Claimant is capable of performing exists in significant numbers in the national economy. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (explaining the claimant bears the burden on the first four steps of the sequential evaluation and the burden shifts to the Commissioner at step five) (citation omitted). The Grids will direct the disability determination "[w]hen a claimant suffers from exertional limitations and the facts of his vocational profile meet all the criteria of a particular rule

6

in the tables of Appendix 2." *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir. 1983) (citing 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(a); *Heckler v. Campbell*, 461 U.S. 458, 462 (1983)). "When a claimant suffers from both exertional and nonexertional limitations, the tables are not conclusive but may only serve as guidelines." *Id.* at 931 (citing 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); *Roberts v. Schweiker*, 667 F.2d 1143 (4th Cir. 1981)). However, "if a claimant's nonexertional impairments do not prevent him from performing the full range of work at a given exertional level, the ALJ may rely solely on the grids to satisfy the burden of proof at step five." *Pickett v. Astrue*, No. 7:10-CV-190-D, 2011 WL 4443229, at *8 (E.D.N.C. Sept. 22, 2011) (unpublished op.) (citing *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987); *Gory*, 712 F.2d at 930-31)).

Grid Rules 202.06 and 202.07 apply to an individual, such as Claimant, who is of "advanced age" and has graduated high school or more, but that education does not provide for direct entry into skilled work. 20 CFR Pt. 404, Subpt. P, App. 2 §§ 202.06, 202.07. Rule 202.06 directs a finding of "disabled" where a claimant has previous skilled or semi-skilled work experience but those skills are not transferrable, and Rule 202.07 directs a finding of "not disabled" where previous skills are transferable. *Id.* "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." S.S.R. 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982). "[A]n individual cannot transfer skills to unskilled work or to work involving a greater level of skill than the work from which the individual acquired those skills." S.S.R. 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (citing S.S.R. 82-41).

In this case, the ALJ in his step-five determination discussed the applicability of the Grids and the need for testimony from a VE:

If the claimant had the residual functional capacity to perform the full range of light

7

work, a finding of "not disabled" would be directed by Medical-Vocational Rules 202.14 and 202.15 with or without transferable skills. Upon turning age 55 (advanced age), Rule 202.07 directs a finding of "not disabled," but only with transferable skills, while Rule 202.06 requires a finding of "disabled," without transferable skills. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled, light occupational base, the undersigned asked Dr. Neulicht whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

(R. 21). The ALJ identified the following positions, based on the VE's tesimony, that an individual with the claimant's age, education, work experience, and RFC could perform: mail clerk, DOT code 209.687-026, light exertion, unskilled, and SVP of 2; office helper, DOT code 239.567-010, light exertion, unskilled, SVP of 2; gate guard, DOT code 372.667-030, light exertion, semi-skilled, and SVP of 3; and police officer safety instructor, DOT code 375.267-042, light exertion, skilled, and SVP of 6. (R. 21). The ALJ noted the VE's testimony that the gate guard position is listed as semi-skilled in the DOT, but unskilled as performed, and that the gate guard and police officer safety instructor positions required no skills in addition to those directly transferable from the Claimant's past relevant work in law enforcement. (R. 21). The ALJ then concluded, considering the VE's testimony and using Rule 202.07 as a framework, that "the claimant's ability to directly transfer skills from his past relevant work to other light jobs, such as the gate guard, as it is defined in the DOT, and the police officer instructor warrant a finding of not disabled for the period after he turned 55." (R. 22).

Claimant first argues that the ALJ implicitly limited Claimant to unskilled work and such a limitation should have resulted in a directed finding of disabled under Grid Rule 202.06, because transferability of skills is irrelevant when a claimant is so limited. Pl.'s Mem. at 4-5. In support of

8

this argument, Claimant also points out that the VE testified there were light, unskilled jobs that Claimant could perform. *Id.* at 5. The ALJ did not expressly limit Claimant to unskilled work in the RFC determination, but did impose the limitation of "a stable work setting with no more than occasional changes[.]" (R. 16). The ability to deal with changes in routine work setting is one of the basic work activities necessary to do most jobs, 20 C.F.R. § 404.1521, and a limitation on that ability is a non-exertional limitation that "may or may not significantly erode" the occupational base. S.S.R. 96-9p, 1996 WL 374185, at *9 (July 2, 1996). Thus, the imposition of the non-exertional limitation of "a stable work setting with no more than occasional changes" is not, as Claimant suggests, *per se* equivalent to limiting Claimant to unskilled work. Rather, pursuant to Fourth Circuit precedent, when a non-exertional limitation such as the one imposed here exists, the ALJ must consult a VE to determine whether "the particular claimant retains the ability to perform specific jobs which exist in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). This is precisely what the ALJ did in the present case, and the VE testified that there were jobs available in significant number that Claimant could perform.[2] (R. 21, 59-71).

Moreover, Claimant has cited no authority for the proposition that the VE's identification of some unskilled jobs merits an inference that the ALJ limited Claimant to unskilled work. In fact, the record supports a contrary conclusion where the VE testified and the ALJ found that Claimant had transferrable skills that would allow him to perform the jobs of gate guard (semi-skilled) and

---

[2] The ALJ in his decision stated that he consulted the VE to "determine the extent to which these limitations erode the *unskilled*, light occupational base . . . ." (R. 21) (emphasis added). However, it is important to note that the use of "unskilled" in this context is not a limitation imposed by the ALJ, but rather a description of a standard occupational base, which "consists of those unskilled occupations identified at the exertional level in question" and "may be enhanced by the addition of specific skilled or semiskilled occupations that an individual can perform by reason of his or her educaton [sic] or work experience." S.S.R. 83-10, 1983 WL 31251, at *3 (Jan. 1, 1983). In other words, the ALJ started with the light, unskilled occupational base, and then added semi-skilled and skilled jobs Claimant could perform based on the transferability of skills.

9

police officer safety instructor (skilled) in addition to the unskilled jobs cited by the VE.[3] (R. 21, 64-69). Furthermore, as the Eleventh Circuit explained in *Lapica v. Comm'r of Soc. Sec.*, 501 F. App'x 895 (11th Cir. Dec. 14, 2012) (unpublished op.), "[t]he unskilled work limitation is not considered in deciding which grid rule to apply, because the ultimate decision of disability is determined by whether a significant number of jobs exist at the unskilled level that a claimant with the specific vocational factors and RFC could perform." 501 F. App'x at 898 (citing 20 C.F.R. Pt. 404, Subpt. P. App. 2 § 200.00(b)). The *Lapica* court rejected the very argument Claimant makes here, that the Grids mandate a finding of disabled even if the claimant has transferrable skills but is limited to unskilled work. *Id.* Accordingly, the VE's identification of some unskilled jobs that Claimant could perform neither warrants an inference that the ALJ limited Claimant to unskilled work, nor does it mandate a determination pursuant to the Grids that Claimant was disabled.

The Claimant also argues that the VE erred in testifying that the limitation of "a stable work setting with no more than occasional changes" is consistent with a job requiring reasoning level 3. Pl.'s Mem. at 4-5. Claimant suggests these are inconsistent because the reasoning level description makes no reference to frequency of changes and does not define a stable work setting. *Id.* at 4. The DOT characterizes reasoning level 3 as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, Appx. C, 1991 WL 688702 (Jan. 1, 2008). The VE noted that reasoning level 3 requires decision making based on "concrete decisions based on standardized situations" and that she believes it to be consistent with the ALJ's

---

[3] Claimant does not appear to challenge the VE's testimony that Claimant's past work in a variety of law enforcement jobs provided transferable skills to the jobs of gate guard and police officer safety instructor.

limitation regarding changes in the work setting. (R. 64). There is no apparent inconsistency in the VE's expert and reasoned conclusion that a job involving "concrete variables in or from standardized situations" would also be characterized by only occasional changes in the work setting, and Claimant provides no authority for his suggestion to the contrary. Furthermore, Claimant has failed to demonstrate that any of the jobs identified by the VE actually require more than occasional changes in the work setting. The VE specifically discussed the limitation of "a stable work setting with no more than occasional changes" and testified that the jobs she identified were consistent with all the limitations offered by the ALJ. (R. 64, 70). The VE stated that her testimony was not inconsistent with the DOT (R. 69-70), and Claimant has failed to demonstrate otherwise; thus, the ALJ was entitled to rely on the VE's testimony at step five. *See Barrett v. Colvin*, No. 4:13-CV-169-D, 2014 WL 3845130, at *5 (E.D.N.C. June 24, 2014) (unpublished op.) ("[A]n ALJ may rely on the VE's testimony where his testimony is consistent with the Dictionary of Occupational Titles ('DOT') or the ALJ elicits a 'reasonable explanation' for any discrepancy between the VE's testimony and the DOT.") (citing *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (unpublished op.); S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)), *adopted by* 2014 WL 3845702 (E.D.N.C. Aug. 5, 2014).

In sum, the ALJ applied the correct legal standard at step five and appropriately relied on the VE's testimony in finding that Claimant has skills transferrable to jobs he can perform that exist in significant number in the national economy. Therefore, based on the VE's testimony and applying Rule 202.07 as a framework (R. 22), the ALJ appropriately determined that Claimant was not disabled and his determination is supported by substantial evidence.

11

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-25] be ALLOWED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 19 day of December, 2014.

Robert B. Jones, Jr.
United States Magistrate Judge